UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| NANCY CHAIREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:09-CV-152-BG |
| ) | ECF |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Nancy Chairez seeks judicial review of a decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits and Supplemental Security Income. The United States District Judge transferred this case to the United States Magistrate Judge. Chairez did not consent to the jurisdiction of the court.

Pursuant to the order of transfer, the undersigned files this "Report and Recommendation." After reviewing the arguments of the parties, the administrative record, and the applicable law, this court recommends that the Commissioner's decision be affirmed and that this action be dismissed.

**I.   Legal Standards**

In order to determine whether a claimant is disabled, the Commissioner considers the applicant's claim under a five-step sequential evaluation. 20 C.F.R. § 404.920 (2009); *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the sequential evaluation, the ALJ decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment in Appendix I of the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment

that prevents him from doing any other work. *Id*. The court's role is limited to determining whether the Commissioner's final decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. *Newton*, 209 F.3d at 452 (citations omitted). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

## II.   Statement of the Case

An Administrative Law Judge ("ALJ") held a hearing on August 1, 2008, at which Chairez testified. (Tr. 21-49.) At that time she was twenty-nine years old and claimed she became disabled almost three years prior on April 18, 2005, when she stepped into a pothole and tripped in her employer's parking lot and injured her back and hip. (Tr. 24-25, 28, 88, 111, 170.) According to the medical records, physicians diagnosed Chairez with acute LS-spine sprain and left hip sprain contusion. (Tr. 169-70.) Thereafter, Chairez underwent a number of x-rays, MRIs, and scans of her pelvis, hips, and spine. (Tr. 173-74, 181, 189, 213-14, 218-23, 226, 228, 232, 393, 409-10.) With the exception of showing mild degenerative changes in Chairez' hips, the results of the tests showed no abnormalities and were considered "normal." *Id*. On the other hand, physicians noted that Chairez walked with an antalgic gait and there was limited range of motion in her left hip. (Tr. 421, 428.) Physicians prescribed medication for Chairez' complaints of pain and prescribed injections and nerve blocks, which she underwent. (Tr. 386, 398, 421, 428, 463.)

The ALJ determined at the fourth step of the Social Secuity sequential evaluation process that Chairez was not disabled because she was capable of performing her past work. (Tr. 19-20.) In reaching this decision he determined that Chairez had not engaged in substantial gainful work

activity since the onset of her alleged disability; that she suffered from severe impairments including a hip/back contusion, gastroesophageal reflux disease, and colitis; and that the impairments did not meet or equal the criteria of a Listing in the Regulations. (Tr. 16-17.) The ALJ then determined that Chairez retained the Residual Functional Capacity ("RFC") to perform sedentary work with restrictions and that she could perform her past work and was therefore not disabled. (Tr. 19-20.) Chairez sought review from the Appeals Council and submitted additional medical records with the request. (Tr. 1-2,4.) The Appeals Council noted that it had considered the additional evidence but also noted that the evidence did not provide a basis for changing the ALJ's decision. (Tr. 1-2.) The Appeals Council concluded that the ALJ's determination was supported by substantial evidence and denied Chairez' request for review. *Id.*

Chairez brings three points of error. Her first two points of error relate to medical evidence that was not submitted to the ALJ and therefore not considered in his decision but that was later submitted to the Appeals Council. She claims evidence would have changed the ALJ's decision and that his failure to obtain the evidence constituted a failure to fully and fairly develop the record. She also claims the ALJ erred at the fourth step of the sequential evaluation process.

### III.   Chairez' First Two Points of Error

Chairez points out that she was not represented at the hearing and that the ALJ was therefore under a heightened duty to fully and fairly develop the record and that he failed in that regard. She claims that the ALJ did not obtain certain records from Roger J. Wolcott, M.D., one of her treating physicians, and records from Bolkar Sahinler, M.D., a pain specialist, and that the ALJ's decision would have differed had he considered the records. Chairez claims the evidence provided prior to the hearing did not contain evidence from Drs. Wolcott and Sahinler and that the ALJ should have

3

deducted, based on other evidence, that the records were missing. She claims notations in examination notes from her treating physician Mario Pena, M.D., indicate that she had been referred to Dr. Sahinler and that comments she made at the hearing should have alerted the ALJ to the fact that she was receiving treatment from Dr. Wolcott. She claims that, based on this knowledge, the ALJ should have inquired about the missing evidence. Chairez further claims that her attorney submitted evidence to the Appeals Council consisting of records from Dr. Wolcott dated April 2005 to October 2008; records from Dr. Sahinler dated May 2005 to March 2007; records from physical therapy she underwent from May 2005 to September 2005; and records from University Medical Center, a hospital from which Chairez received treatment and underwent diagnostic testing. Chairez points out that the Appeals Council noted in its letter denying her request for review that it had considered the evidence her attorney submitted. Citing *Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005), she argues that the court is obligated to review the entire record, including the effect the new evidence would have had upon the ALJ's decision.

As Chairez argues, the court must consider the new evidence submitted to the Appeals Council along with the other evidence in the record to determine whether the ALJ's decision, which became the Commissioner's final decision, is supported by substantial evidence. *Id.* at 337-38. This court has considered the record as a whole and has concluded that the Commissioner's decision is supported by substantial evidence. The court has also concluded that the ALJ did not err and that the evidence submitted to the Appeals Council does not provide a basis for reversing the ALJ's decision.

Established Fifth Circuit precedent obligates the ALJ to develop the record fully and fairly to ensure that his or her decision regarding a claim for benefits is an informed decision based upon

4

sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). This obligation is heightened in a case in which the claimant is not represented by counsel and, in such a case, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."[1] *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). On the other hand, the Fifth Circuit Court of Appeals has repeatedly instructed that remand should not issue for an ALJ's failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure to do so. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (citations omitted); *Brock v. Chater*, 84 F.3d 728; *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). "Prejudice can be established by showing . . . that the additional evidence might have led to a different decision." *Newton,* 209 F.3d 458 (quoting *Ripley v. Chater*, 67 F.3d 552, 557 n. 22 (5th Cir. 1995)). Chairez has not made such a showing.

Chairez claims the ALJ's conclusions regarding her credibility and her RFC would have differed had he obtained the records and evaluated all of the evidence. In regard to the ALJ's credibility determination, she argues that the ALJ's failure to obtain records from Drs. Wolcott and Sahinler led him to incorrectly evaluate her credibility. In support of this argument she claims the ALJ stated that he could not accept her as a fully credible witness regarding her back and hip pain because a consulting doctor noted that she appeared in his office with a cane in May 2007 but the record did not document a prescription for a cane. Chairez points out that Dr. Wolcott noted in September and October of 2008 in evidence the ALJ did not consider that she used a cane and that a wheelchair had been ordered for her and that she was awaiting insurance approval. *See* Tr. 429-30.

---

[1] It should be noted that Chairez has not argued that she was not informed of her right to obtain counsel before the hearing or that the ALJ conducted the hearing in a biased or prejudicial manner. She argues only that the ALJ did not obtain and consider evidence from Drs. Wolcott and Sahinler.

5

Chairez also points out that the ALJ made two references to the fact that Dr. Pena stated in September 2005 that he expected her to return to work in three weeks. Chairez points to evidence the ALJ did not consider from Dr. Wolcott that he believed she should continue physical therapy. *See* Tr. 428. She also points to evidence showing that Dr. Wolcott referred her to a pain specialist. *See* Tr. 424. She argues that had the ALJ obtained Dr. Wolcott's records, he would have known that Chairez was not in a position to return to work and he would not have placed weight upon Dr. Pena's notations about a return to work in September 2005.

Careful consideration of the ALJ's opinion and the evidence Chairez cites demonstrates that the evidence at issue was not material and that the ALJ's review of the evidence would not have changed his decision. Evidence is "material" when it is relevant, probative, and likely to have changed the Commissioner's decision. *Pierre v. Sullivan*, 884 F. 2d 799, 803 (5th Cir. 1989). Put another way, evidence is not material unless there is a reasonable possibility that, if it were considered, it would have changed the outcome of the determination of non-disability. *See Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). There is no "reasonable possibility" that the evidence at issue would have changed the ALJ's decision. In addition, even if the court were to assume, *arguendo*, that the ALJ should have obtained the records from Drs. Wolcott and Sahinler, any error was harmless. Error is regarded as "harmless" when it does not compromise the ALJ's ultimate conclusion. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); s*ee also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (remand not required in cases in which the ALJ would not have reached a different conclusion in absence of the alleged error). Any error in this case must be considered harmless.

First, the ALJ's credibility determination was not based solely on the fact that he believed Chairez had never been prescribed a cane. His decision that he could not accept Chairez as "a fully credible witness regarding her back and hip pain" was based on the "benign nature of [the] clinical evidence, the good effects of treatment and medication, and the opinion of Dr. Pena that in September 2005 the claimant could return to work in three weeks." (Tr. 19.) As the ALJ noted, the record is replete with records of x-rays, MRIs, and scans that were essentially normal. (Tr. 17, 173-74, 181, 189, 213-14, 218-23, 226, 228, 232, 393, 409-10.) In the evidence the ALJ considered a radiologist noted, "One might be able to make a little case for minimal DJD in the hips, but I consider [it] to be pressing the issue a bit." (Tr. 226.) Such evidence supports the ALJ's characterization of the medical evidence regarding Chairez' impairments as "benign," and the records of diagnostic testing Chairez' attorney provided to the Appeals Council do not differ from the evidence the ALJ considered. *See* Tr. 393, 397, 409-10; *see also* Tr. 412 (notation in records from Dr. Wolcott indicating that x-rays of left hip, pelvis, and lumbar spine were negative). That the ALJ found relevant Dr. Pena's notation that Chairez could return to work in September 2005 was not prejudicial. Nothing in the evidence from Dr. Wolcott or Dr. Sahinler contradicts Dr. Pena's notation, and Chairez testified at the hearing in August 2008 that she had been working full-time as a customer service representative since March 2008 and that she believed she could work at a job involving sedentary work. (Tr. 25, 37-40.) Chairez' claim that the ALJ would have changed his credibility determination had he obtained and considered evidence from Drs. Wolcott and Sahinler is without merit.

Chairez' claim that the ALJ would have changed the RFC determination had he obtained and considered evidence from Drs. Wolcott and Sahinler is likewise without merit. The ALJ determined

7

that Chairez was capable of performing sedentary work that would allow her to sit or stand at will and change positions as needed and that would allow her to employ the restroom six to eight times per day. (Tr. 18.) The ALJ's determination is supported by substantial evidence in the record as a whole. Chairez specifically testified that she could sit for thirty minutes and stand for forty-five minutes before needing to change positions; that she could perform a job at the sedentary level; and that she was working at the time of the hearing. (Tr. 32, 37-40.) Chairez' testimony that she had worked for five months also supports the RFC determination. It is significant that Chairez testified in August 2008 that she was working and that she believed she performed sedentary work, and yet in September 2008 Dr. Wolcott noted that Chairez was using a single-tip cane to walk, and it was at that time that he recommended a wheelchair for her. (Tr. 429.) If Chairez could perform full-time work at the time that she suffered from impairments severe enough to warrant such an assistive device, she was capable of performing the work identified by the ALJ. *See Johnson v. Bowen*, 864 F.2d 340, 347-48 (5th Cir. 1988) (affirming a finding of non-disability reached at the fourth step of the sequential evaluation process based on fact that claimant had performed past work despite impairments he alleged to be disabling).

## IV.     Chairez' Third Point of Error

Chairez argues that the ALJ erred in relying upon vocational expert testimony at step four of the sequential evaluation process. She argues that reliance upon a vocational expert is not necessary until step five of the evaluation process and that, because the ALJ made his determination at step four of the evaluation process, the burden of proof never shifted to the Commissioner. Chairez' contention is without merit. The Commissioner's regulations direct that the ALJ may rely on the expertise of a vocational expert or information in the Dictionary of Occupational Titles at step

8

four of the sequential evaluation process to determine whether the claimant is capable of performing his past work. 20 C.F.R. § 404.1560(b)(2). The regulations direct:

> [A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

*Id*.

At the hearing the ALJ asked the vocational expert what type of work Chairez had performed in the past, and the vocational expert listed a number of jobs that Chairez had worked in the past and the corresponding exertional level at which Chairez performed the jobs. (Tr. 40-41.) The vocational expert specifically testified that Chairez had worked as an administrative assistant at a tax preparation office and that the job was performed at the sedentary exertional level with a sit/stand option and that it did not require lifting objects in excess of ten pounds. (Tr. 40-42.) The ALJ accepted the vocational expert's testimony and determined that Chairez was capable of performing her past work as an administrative assistant. (Tr. 19-20). Because the regulations authorize the ALJ to rely upon vocational expert testimony at step four of the evaluation process, Chairez' final point of error must be rejected.

## V.   **Right to Object**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place

9

in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

        Dated:        April 28, 2010.

                                      NANCY M. KOENIG
                                      United States Magistrate Judge